UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| DEBORAH D. ROLFE, | ) |
| | ) |
|     *Plaintiff* | ) |
| | ) |
| v. | )    **Civil No. 10-06-B-W** |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| **Commissioner of Social Security,** | ) |
| | ) |
|     *Defendant* | ) |

## *REPORT AND RECOMMENDED DECISION*[1]

This Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal raises the question of whether the commissioner supportably found that the plaintiff, who alleges that she is disabled by fibromyalgia, obesity, diabetes, affective disorder, anxiety disorder, coronary artery disease, angina, and diverticulitis, is capable of performing work existing in significant numbers in the national economy. I recommend that the decision of the commissioner be affirmed.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. § 405.101 (incorporating 20 C.F.R. §§ 404.1520, 416.920); *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff had severe impairments of fibromyalgia, obesity, diabetes, affective disorder, anxiety disorder, coronary artery disease, angina, and diverticulitis, Finding 3, Record at 11; that she

---

[1] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on September 15, 2010, pursuant to Local Rule 16.3(a)(2)(C), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

retained the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), except that she could occasionally stoop, kneel, crouch, crawl, and climb ramps and stairs, could not climb ladders, ropes, or scaffolds, could not balance, could tolerate interaction with coworkers and supervisors in small groups and in one-on-one situations, and could tolerate frequent interaction with the public, Finding 5, *id*. at 13; that she could perform past relevant work as a dispatcher, telemarketer, and office manager, which did not require the performance of work-related activities precluded by her RFC, Finding 6, *id*. at 17, and that she, therefore, was not disabled from February 1, 2008, (her alleged date of onset of disability) through the date of decision (September 3, 2009), Finding 7, *id*. at 18.[2] The Decision Review Board declined to disturb the decision, *see id*. at 1-4, making it the final determination of the commissioner, 20 C.F.R. § 405.450(a); *Dupuis v. Secretary of Health & Human Servs*., 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 4 of the sequential process, at which stage the claimant bears the burden of proof of inability to return to past relevant work. 20 C.F.R. § 405.101 (incorporating 20 C.F.R. §§ 404.1520(f), 416.920(f)); *Bowen v. Yuckert*, 482 U.S. 137,

---

[2] The plaintiff is insured for purposes of SSD benefits through March 31, 2013. *See* Finding 1, Record at 11.

146 n.5 (1987). At this step, the commissioner must make findings of the plaintiff's RFC and the physical and mental demands of past work and determine whether the plaintiff's RFC would permit performance of that work. 20 C.F.R. § 405.101 (incorporating 20 C.F.R. §§ 404.1520(f), 416.1520(f)); Social Security Ruling 82-62, reprinted in *West's Social Security Reporting Service* Rulings 1975-1982 ("SSR 82-62"), at 813.

## I. Discussion

The plaintiff seeks reversal and remand on the bases that the administrative law judge failed to give appropriate weight to the opinions and treatment records of treating providers John Patten, D.O., Kendra LeBreton, PA-C, and Robert Hirshberg, LADC, LCPC, and made a flawed credibility determination. *See* Plaintiff's Itemized Statement of Specific Errors ("Statement of Errors") (Docket No. 12) at [2]-[5]. I find no error in his handling of those matters and, accordingly, recommend that the decision of the commissioner be affirmed.

### A. Treatment of Treating Providers

In support of her disability applications, the plaintiff submitted a May 20, 2009, physical RFC opinion of physician's assistant LeBreton, co-signed by supervising physician Dr. Patten, and a July 30, 2009, mental RFC opinion of counselor Hirshberg. *See* Record at 1070-73, 1175-80.

LeBreton noted that she had been the plaintiff's personal care provider since February 2007, treating her for fibromyalgia, diabetes mellitus II, hypertension, hyperlipidemia, anxiety, depression, and coronary artery disease. *See id*. at 1070. She described the plaintiff as suffering chronic muscle pain, fatigue, anxiety, and chest pain, both cardiac and non-cardiac. *See id*. She indicated, *inter alia*, that the plaintiff's experience of pain or other symptoms was severe enough to often interfere with attention and concentration, that the plaintiff was capable of low-stress

3

jobs, and that the plaintiff could sit for about four hours, and stand/walk for about four hours, in an eight-hour workday, with a need to shift positions at will. *See id.* at 1071-72. She estimated that the plaintiff would need to take about one unscheduled break per workday and would be absent from work about two days per month as a result of her impairments or treatment. *See id.* at 1072-73.

Hirshberg noted that he had seen the plaintiff weekly since before May 2007, treating her for major depression, anxiety, and severe family stress. *See id.* at 1175.[3] He assessed her, *inter alia*, as having moderate limitations in activities of daily living and marked limitations in maintaining social functioning and in concentration, persistence, or pace, and estimated that she would be absent from work more than four days per month as a result of her impairments or treatment. *See id.* at 1179.

The administrative law judge considered, but afforded little to no weight to, either opinion, explaining:

> As for the opinion evidence, the [plaintiff's] treating physician and physician's assistant [Dr. Patten and LeBreton] have indicated that the [plaintiff] can do a limited range of sedentary to light, low stress work, and that she would often have problems maintaining concentration, persistence or pace. These opinions are given limited weight because they are not supported by substantial medical evidence. While the evidence convinces the undersigned that the [plaintiff's] impairments limit her to sedentary work, it is not persuasive of a conclusion that she cannot sustain concentration on tasks, or interact well with others. The [plaintiff's] counselor's [Hirshberg's] opinion that the [plaintiff] cannot sustain a normal work day or work week, and is markedly limited in her ability to interact with others and maintain concentration, persistence, or pace, is likewise given little weight because it is not consistent with the record as a whole, including counseling records which generally reflect no observations of difficulties in those areas. Furthermore, the counselor estimated the [plaintiff's] global functioning level to be 60, which denotes a moderate, and nearly mild, degree of impairment, which is also inconsistent with the degree of limitation he assessed. The [plaintiff's] global functioning level was estimated to be 55 when she was

---

[3] The plaintiff states that she first saw Hirshberg on December 28, 2006, and had seen him a total of 97 times as of June 11, 2009. *See* Statement of Errors at [3] n.2.

> discharged from the hospital in July 2009, which also represents a moderate level of impairment.

*Id*. at 17 (citations omitted).

The administrative law judge gave great or considerable weight to the opinions of Disability Determination Services ("DDS") nonexamining consultants that the plaintiff had the physical capacity to perform a range of sedentary work and that she was essentially no more than mildly limited in her ability to perform the mental demands of work. *See id*.; *compare* Finding 5, *id*. at 13 *with id*. at 792-99, 817. In so doing, he noted that he had found the plaintiff's statements concerning the intensity, persistence, and functionally limiting effects of her pain and other symptoms not credible to the extent inconsistent with his RFC determination. *See id*. at 14. In support of that finding, he identified a number of inconsistencies between her allegations and information contained in the voluminous medical record as well as indications in those records that she was capable of a greater RFC than alleged. *See id*. at 14-16.

The plaintiff contends that the administrative law judge committed reversible error in failing to afford the LeBreton/Patten and Hirshberg opinions controlling or, at least, persuasive weight. *See* Statement of Errors at [2]. She argues that LeBreton and Hirshberg, who had seen and treated her frequently, were in a much better position than the DDS nonexamining consultants to assess her limitations and capacities, and that their opinions were not inconsistent with the other substantial evidence in the case record, as a result of which they should have been accorded controlling or persuasive weight. *See id*. at [3]-[4].

In certain circumstances, the opinion of a "treating source" on "the issue(s) of the nature and severity of [a claimant's] impairment(s)" is entitled to controlling weight. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). However, "[c]ontrolling weight may not be given to a treating source's medical opinion unless the opinion is well-supported by medically acceptable clinical

and laboratory diagnostic techniques." Social Security Ruling 96-2p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2010) ("SSR 96-2p"), at 111. "Even if a treating source's medical opinion is well-supported, controlling weight may not be given to the opinion unless it also is 'not inconsistent' with the other substantial evidence in the case record." *Id*.

A "treating source" is defined as "your own physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you." 20 C.F.R. §§ 404.1502, 416.902. LeBreton, a nurse practitioner, is not an "acceptable medical source" and, thus, not a "treating source" for Social Security purposes. *See id*.; *see also id*. §§ 404.1513(a), 416.913(a). Nonetheless, the countersignature of her RFC opinion by Dr. Patten, her supervising physician, renders her opinion that of a "treating source," Dr. Patten. *See Miller v. Astrue*, Civil No. 09-156-B-W, 2010 WL 1935752, at *2 (D. Me. May 10, 2010) (rec. dec., *aff'd* May 28, 2010) (form filled out by physician's assistant, who was not an "acceptable medical source" for purposes of Social Security regulations, could be considered to present the conclusions of former treating physician who countersigned it).

### 1. LeBreton/Patten RFC Opinion

Assuming *dubitante* that the LeBreton/Patten opinion qualifies as one touching on the "nature and severity" of the plaintiff's impairments, the administrative law judge nonetheless supportably declined to adopt it.[4] In essence, the administrative law judge found the

---

[4] The LeBreton/Patten opinion addresses RFC, a determination reserved to the commissioner with respect to which even opinions of treating sources are accorded no "special significance." *See* 20 C.F.R. §§ 404.1527(e)(1)-(3), 416.927(e)(2)-(3). Treating source opinions on the subject of RFC are entitled to consideration, but never to controlling weight. *See, e.g.,* Social Security Ruling 96-5p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2010) ("SSR 96-5p"), at 123-24.

LeBreton/Patten opinion inconsistent with other substantial evidence in the case record, particularly insofar as LeBreton and Dr. Patten indicated that the plaintiff's symptoms often would interfere with her attention and concentration, that she required low-stress work, and that she had difficulties with pace (for example, would require at least one unscheduled break per workday and could be expected to have at least two days' impairment-related absences per month).[5]

The administrative law judge correctly observed, *inter alia*, *see* Record at 15-16, that:

1. Records of Acadia Hospital dated January 2008 to June 2009 repeatedly note no disturbance of thought and an ability to focus. *See, e.g., id*. at 752 (plaintiff noted by Hirshberg on February 7, 2008, to have organized, linear, and goal-directed thought form and to be able to focus, with memory not tested but appearing intact), 681 (same observations by Hirshberg on August 21, 2008), 985 (plaintiff described by Hirshberg on February 26, 2009, as "cognitively organized," with an ability to focus and a seemingly intact but untested memory), 1075 (same observations by Hirshberg on June 11, 2009), 1143 (same observations by Hirshberg on July 23, 2009).

2. Primary care records dated 2008 and 2009 frequently indicate that the plaintiff's mood, affect, attention, and concentration were normal. *See, e.g., id*. at 843 (February 17, 2009, note of LeBreton), 867 (October 17, 2008, note of LeBreton), 874 (September 19, 2008, note of LeBreton), 1119 (May 22, 2009, note of LeBreton), 1125 (April 28, 2009, note of LeBreton).

---

[5] The plaintiff complains that, in finding the treating provider opinions "not supported by substantial medical evidence," the administrative law judge misstated the standard set forth in SSR 96-2p, namely, whether a treating source opinion is "not inconsistent with the other substantial evidence in the [individual's] case record." Statement of Errors at [3] (quoting SSR 96-2p at 111). Any error in this regard is harmless. The administrative law judge clearly considered whether the LeBreton/Patten opinion was inconsistent with other substantial evidence of record. *See* Record at 14-17.

7

3. Results of a physical examination in January 2009 were normal (apart from calluses and a wart on the plaintiff's feet), and the plaintiff was noted to be "much happier, laughing, talkative." *Id*. at 852-53.

4. On a couple of occasions following hospitalizations, the plaintiff was cleared to resume activities as tolerated. *See, e.g., id*. at 775 (hospital discharge note of August 28, 2008), 966 (hospital discharge note of February 13, 2009).

Based on these and other findings, the administrative law judge supportably deemed the LeBreton/Patten RFC opinion inconsistent with other substantial medical evidence of record, including certain of LeBreton's own treatment notes. He accordingly did not err in declining to afford that opinion controlling or persuasive weight.[6]

### 2. Hirshberg RFC Opinion

As the plaintiff acknowledges, *see* Statement of Errors at [3] n.2, Hirshberg, a counselor, does not qualify as an "acceptable medical source" for Social Security purposes, *see* 20 C.F.R. 20 C.F.R. §§ 404.1513(a) and 416.913(a). "[O]nly 'acceptable medical sources' can be considered treating sources, as defined in 20 CFR 404.1502 and 416.902, whose medical opinions may be entitled to controlling weight." Social Security Ruling 06-03p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2010) ("SSR 06-03p"), at 329. Yet, evidence from "other sources" such as Hirshberg may not be ignored:

> With the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not 'acceptable medical sources,' such as nurse practitioners, physician assistants, and licensed clinical social workers, have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and

---

[6] To the extent that the plaintiff complains that the administrative law judge failed to analyze all factors pertinent to the weighing of treating source opinions pursuant to 20 C.F.R. §§ 404.1527 and 416.927, *see* Statement of Errors at [3]-[4], this court has held that RFC opinions of acceptable medical sources may be discounted for good reason without slavish discussion of all potentially-applicable factors, *see, e.g., Golfieri v. Barnhart*, No. 06-14-B-W, 2006 WL 3531624, at *4 (D. Me. Dec. 6, 2006) (rec. dec., *aff'd* Dec. 29, 2006).

8

psychologists. Opinions from these medical sources, who are not technically deemed 'acceptable medical sources' under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file.

*Id*. at 330. "The weight to which such evidence may be entitled will vary according to the particular facts of the case, the source of the opinion, including that source's qualifications, the issue(s) that the opinion is about, and many other factors[.]" *Id*. at 331. Finally:

> Although there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision, the adjudicator generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case.

*Id*. at 333.

The administrative law judge met the requirements of SSR 06-03p with respect to the Hirshberg opinion. He did not ignore it. He explained the weight he had given it. And he provided an explanation sufficient to follow his reasoning, namely, that the Hirshberg findings were inconsistent with other evidence of record, including evidence in Hirshberg's own treatment notes. *See id*. at 17.

Although SSR 06-03, in contrast to regulations pertaining to the handling of treating source opinions, does not require that an adjudicator articulate "good reasons" for the rejecting of an "other source's" opinion, *compare* SSR 06-03p at 333 *with* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2), the administrative law judge did that as well. As noted above, he correctly observed that treatment records, including those of Hirshberg, repeatedly noted no deficits in concentration, persistence, or pace. He also supportably concluded, *see* Record at 17, that Hirshberg's assessment of the plaintiff's Global Assessment of Functioning ("GAF") score as 60 at the time of his RFC evaluation, *see id.* at 1175, was facially inconsistent with his finding of

several marked functional impairments.[7] As the administrative law judge also observed, *see id.* at 12, while the evidence indicated that the plaintiff had considerable conflict with family members and significant others, it did not reveal a history of difficulties interacting appropriately with treating providers or coworkers, and her providers repeatedly referred to her as cooperative. *See id.* at 680 (cooperative, per August 21, 2008, note of Hirshberg), 746 (cooperative and "quite conversive," per March 6, 2008, note of Hirshberg), 1119 (cooperative, per May 22, 2009, note of LeBreton), 1125 (cooperative, per April 28, 2009, note of LeBreton).

The administrative law judge committed no error in his handling of the Hirshberg RFC opinion.

### B. Credibility Finding

The plaintiff finally challenges the administrative law judge's credibility finding, arguing that he (i) contravened the requirements of Social Security Ruling 96-7p ("SSR 96-7p") by focusing solely on perceived areas of inconsistency and failing to address any of the objective medical evidence that did substantiate the plaintiff's claims, (ii) failed to indicate which specific allegations were, or were not, found credible, and (iii) failed, with one exception, to afford the plaintiff the opportunity to explain the supposed inconsistencies before relying on them to her detriment. *See* Statement of Errors at [4]-[5].

---

[7] A GAF score represents "the clinician's judgment of the individual's overall level of functioning." American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed., text rev. 2000) ("DSM-IV¬TR"), at 32. The GAF score is taken from the GAF scale, which "is to be rated with respect only to psychological, social, and occupational functioning." *Id.* The GAF scale ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death). *Id.* at 34. A GAF score of 51 to 60 represents "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflict with peers or co-workers)." *Id.* (boldface omitted). A GAF score of 61 to 70 reflects "[s]ome mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." *Id.* (boldface omitted).

The plaintiff fails to make a persuasive case for reversal and remand on any of these bases. With respect to the first point, this court has rejected the notion that an administrative law judge must slavishly discuss all factors relevant to analysis of a claimant's credibility and complaints of pain in order to make a supportable credibility finding. *See, e.g., Crocker v. Astrue*, No. 07-220-P-S, 2008 WL 2775980, at *6 (D. Me. June 30, 2008) (rec. dec., *aff'd* July 23, 2008). Administrative law judges' credibility findings are entitled to deference, especially when supported by specific findings. *See, e.g., Frustaglia v. Secretary of Health & Human Servs.,* 829 F.2d 192, 195 (1st Cir. 1987) ("The credibility determination by the ALJ, who observed the claimant, evaluated his demeanor, and considered how that testimony fit in with the rest of the evidence, is entitled to deference, especially when supported by specific findings.").

As noted by counsel for the commissioner at oral argument, the administrative law judge's credibility determination in this case is supported by myriad specific findings, *see* Record at 14-17, not least (i) the plaintiff's acknowledgement, at hearing, that she "kind of lied" when she certified, for purposes of receiving unemployment benefits subsequent to her alleged onset date of disability, that she was ready, able, and willing to work, *see id*. at 38-39, and (ii) her failure, when questioned initially at hearing regarding her sources of income subsequent to her alleged onset date of disability, to disclose that she had received those benefits, *see id*. at 38.

As the administrative law judge also observed, *see id*. at 14-15, treatment records reflect activity contradicting the plaintiff's hearing testimony that she spent most of her day isolated in her residence, sleeping or watching television, *see id*. at 51-54, including notations in March 2008 that she was working on her deceased mother's estate, *see id*. at 745-46, in August 2008 that she was working hard rearranging furniture, *see id*. at 775, in October and December 2008

that she was essentially raising her daughter's baby, *see id.* at 1004, 1021, 1023, and in June 2009 that she was working a few hours a day in a business owned by her brother, *see id*. at 1075.

The plaintiff's second point, that the administrative law judge failed to explain which allegations he discredited, *see* Statement of Errors at [5], likewise is unavailing. The administrative law judge explained that he credited the plaintiff's allegations only to the extent that they were consistent with his RFC determination. *See* Record at 14.

The plaintiff cites no authority in support of her third and final point, that the administrative law judge was required to afford her a chance to explain any seeming inconsistencies on which he wished to rely, *see* Statement of Errors at [5], and I know of none.

## II. Conclusion

For the foregoing reasons, I recommend that the decision of the commissioner be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which <u>de</u> <u>novo</u> review by the district court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to <u>de</u> <u>novo</u> review by the district court and to appeal the district court's order.*

Dated this 31st day of October, 2010.

                                                  /s/ John H. Rich III
                                                  John H. Rich III
                                                  United States Magistrate Judge